

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KCB:GP/KM  
F# 2024R00204

*271 Cadman Plaza East*  
*Brooklyn, New York 11201*

January 14, 2025

<u>By Email and ECF</u>

The Honorable Lara K. Eshkenazi  
United States Magistrate Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

        Re:    <u>United States v. Oscar Eduardo Quilarque Sosa</u>  
              <u>Criminal Docket No. 25-12 (RPK) (CLP)</u>

Dear Judge Eshkenazi:

        The government submits this letter in advance of the defendant Oscar Eduardo Quilarque Sosa's initial appearance and detention hearing in the above captioned case. For the reasons set forth in detail below, because the defendant poses a danger to the community and is a flight risk, the government respectfully requests that the defendant be detained pending trial.

I.      <u>Background</u>

    A.    <u>The Defendant's Charged Conduct</u>

        On January 8, 2025, a grand jury sitting in the Eastern District of New York returned a four-count indictment against the defendant, charging him with violations of Title 18, United States Code, Sections 922(a)(1)(A) (unlicensed firearms dealing), 922(g)(5)(A) (illegal alien in possession of firearms) and 933 (trafficking in firearms), and Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute one or more controlled substances). The charges relate to a series of controlled purchases conducted by federal law enforcement agents, during which the defendant personally sold numerous firearms and/or narcotics on seven occasions in Queens and the Bronx.

        In particular, between September 2024 and October 2024, the defendant sold, on two separate occasions, a total of approximately 1.1 kilogram of a substance known as "Tusi," which is a powdery concoction that contained MDMA and ketamine; approximately 100 grams of that substance further contained methamphetamine. Photos below show the Tusi the defendant sold:



   Then, between October 2024 and November 2024, on five separate occasions, the defendant sold a total of 11 firearms, including five rifles, as well as high-capacity magazines for those rifles and various rounds of ammunition in calibers compatible with the sold firearms. The photos of the firearms the defendant sold are below:





       All seven of the narcotics and/or firearms sales the defendant made were captured in video and audio recordings during which the defendant can be seen making the sales, including taking cash payments for those sales. Furthermore, law enforcement agents observed the defendant at the scene of all seven sales.

       B.       <u>The Defendant's January 13, 2025 Arrest and Suspected Shooting</u>

       The defendant was arrested on January 13, 2025 pursuant to an arrest warrant issued in connection with the above-captioned indictment. The defendant was arrested while in a vehicle in or near Monroe, New York.

3

C.   The Defendant's Criminal History and Immigration Status

The defendant has no criminal history within the United States. According to records maintained by the Department of Homeland Security, the defendant, who is a Venezuelan citizen, illegally entered the United States in approximately May 2023 and has been unlawfully remaining in the United States without valid authorization or status.

II.   Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

In cases such as this, however, where there is probable cause to believe that the defendant has violated 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), there is a statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). Even if a defendant can overcome that presumption, the special risk of dangerousness posed by defendants who have committed such crimes "remains a factor to be considered among those weighed by the district court." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The possibility of a significant sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022) ("The prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence.").

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial

4

context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also Mercedes, 254 F.3d at 437 ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III.  Argument

As discussed below, the defendant should be detained pending trial because the defendant fails to overcome the statutory presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. See 18 U.S.C. § 3142(e)(3)(A). Additionally, the Section 3142(g) factors counsel heavily in favor of the defendant's detention.

A.  Nature and Circumstance of the Crimes

The nature and circumstances of the charged offenses are extremely serious. Driven by greed and complete disregard to the safety of the community, the defendant did not hesitate to sell guns and drugs, two of the most dangerous elements currently affecting New York City, including this District. Between September 2024 and November 2024, the defendant was able to acquire and sell more than one kilogram of narcotics, approximately 100 grams of which contained methamphetamine, a highly addictive controlled substance, and 11 firearms, as well as various rounds of ammunition. Most concerningly, among the 11 firearms the defendant trafficked were five assault rifles with accompanying high-capacity magazines and ammunition rounds compatible with those rifles. Such high-powered and automatic rifles pose an even greater threat to the community—in the wrong hands, a single assault rifle can kill or gravely injure a large group of people in an incident, especially in a dense metropolitan area like New York City.

B.  Weight of the Evidence

The government's evidence is strong. As discussed above, all seven incidents in which the defendant sold narcotics and/or firearms were captured on audio and video recordings that visibly show the defendant's face during the sales, and each incident was monitored by law enforcement agents. The evidence also includes the defendant's phone records and communications arranging the sales.

C. <u>History and Characteristics of the Defendant</u>

As described above, although the defendant has no criminal history, at least in the United States, the defendant has been remaining in the United States unlawfully and without status, thus further demonstrating his disregard for the law and risk of flight.

D. <u>The Defendant Poses a Danger and a Risk of Flight</u>

Given the seriousness of the conduct outlined above, the defendant's release would present a serious danger to the community. As the defendant demonstrated in the firearm sales discussed above, the defendant was able to obtain 11 firearms, including high powered assault rifles, in just a one-month span. For example, for a transaction in November 2024 alone, the defendant readily obtained and then sold three assault rifles, along with accompanying magazines and ammunition rounds. See <u>United States v. Smalls</u>, No. 20-CR-216 (LTS), 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (declining to overrule magistrate judge's pretrial detention determination that was based in part on "the general danger to the community posed by [the defendant's] apparently ready to access to firearms"). If released, the defendant will continue to pose a danger to the community, including to potential witnesses in this case. This danger cannot be cured by any combination of release conditions.

The defendant also faces significant evidence of his criminal conduct and harsh penalties prescribed by law, giving him a substantial incentive to flee. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." <u>United States v. Edwards</u>, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021). The government preliminarily estimates that the defendant's Guidelines range for the charged conduct is 78 to 97 months' imprisonment, 60 months of which is a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(viii). The Second Circuit has held that the possibility of a severe sentence— including a sentence similar to the one the defendant faces—can establish flight risk. See <u>United States v. Scali</u>, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); <u>see also</u> <u>United States v. Khusanov</u>, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."). In addition, the defendant poses an even greater risk of flight because he has significant ties to his home country of Venezuela, having illegally entered the United States relatively recently in 2023. See <u>United States v. Zhang</u>, No. 22-CR-208, 2022 WL 17420740, at *3, <u>aff'd</u>, 55 F.4th 141 (2d Cir. 2022) (finding that the defendant's Chinese citizenship and significant ties to both China and Taiwan "enhance[d] his risk of flight"). When considering the defendant's substantial incentive to flee and significant foreign ties together, the defendant unquestionably poses a real risk of flight. See <u>United States v. Boustani</u>, 356 F. Supp. 3d 246, 255 (E.D.N.Y. 2019), <u>aff'd</u>, 2019 WL 2070656

6

(2d Cir. Mar. 7, 2019) ("This Court must look to the totality of the circumstances and of Defendant's characteristics, which ultimately demonstrate a risk of flight.").

IV.   Conclusion

       For the foregoing reasons, the government respectfully requests that the Court issue a permanent order of detention against the defendant pending trial.

Respectfully submitted,

CAROLYN POKORNY
Acting United States Attorney

By:   /s/
Gabriel Park
Kate Mathews
Assistant U.S. Attorneys
(718) 254-6099

cc:   Clerk of Court (LKE)
     Defense Counsel (via ECF and email)